**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------- X
:
RAFAEL M. PANTOJA,                          :
:
                    Plaintiff,              :          Case No. 11 Civ. 3636 (VLB)
:
          - v -                             :          ECF Case
:
BANCO POPULAR AND AMERICAN                  :
SECURITY INSURANCE COMPANY,                 :
:
                    Defendants.             :
------------------------------------------- X


**MEMORANDUM OF LAW OF DEFENDANT AMERICAN SECURITY**
**INSURANCE COMPANY IN SUPPORT OF MOTION TO DISMISS**



SULLIVAN & WORCESTER LLP

Andrew T. Solomon
Karen E. Abravanel
1290 Avenue of the Americas, 29th Floor
New York, New York 10104
Telephone: (212) 660-3000
Facsimile: (212) 660-3001
Email: asolomon@sandw.com
          kabravanel@sandw.com

*Attorneys for Defendant American Security*
*Insurance Company*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS .......................................................................................... 1

ARGUMENT ............................................................................................................... 3

      I.      The Standard Of Review ............................................................... 3

      II.     Pantoja Cannot Prove That The ASIC Policy Covers His Alleged Loss ................ 4

      III.    Pantoja's RICO Claims Against ASIC Should Be Dismissed .............................. 6

CONCLUSION ........................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...................................................... 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................. 3, 5

*Boyle v. United States,* 129 S.Ct. 2237 (2009).......................................................... 8

*Figueroa Ruiz v. Alegria*, 896 F.2d 645 (1st Cir. 1990) ........................................ 6

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ..................... 7, 8

*H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989) ........................................ 7

*Hemi Group, LLC v. City of New York,* 130 S.Ct. 983 (2010) ...................................... 9

*Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992)........................... 9

*Hoosier Energy Rural Elec. Coop., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310 (7th Cir. 1994)................................................................................. 5

*Maurice Goldman & Sons, Inc. v. Hanover Insurance Co.*, 80 N.Y.2d 986, 529 N.Y.S.2d 645 (1992).............................................................................. 4

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993)..................................... 6

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268 (2d Cir. 2011)................................ 6

*Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270 (2d Cir. 2000) ..................... 4

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) ............................ 1

*Rothman v. Gregor*, 220 F.3d 81(2d Cir. 2000)............................................................ 1

*Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178 (2d Cir. 2008) .............................. 6, 7

*Vicon Fiber Optics Corp. v. Scrivo,* 201 F. Supp. 2d 216 (S.D.N.Y. 2002)................................. 9

*Village of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114 (2d Cir. 1995) .............................. 4

**Statutes**

18 U.S.C. § 1961.......................................................................................... 7, 8

18 U.S.C. § 1962.......................................................................................... 7

**Treatises**

*Couch on Insurance* (3d ed. Rev. 2011) ...................................................................... 4, 5

Ostrager and Newman, *Insurance Coverage Disputes* (15th ed. Rev. 2011) ................................. 5

Defendant American Security Insurance Company ("ASIC") respectfully submits this memorandum of law in support of its motion to dismiss the second and third causes of action of Plaintiff Rafael M. Pantoja's ("Pantoja") Amended Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In the Amended Complaint, Pantoja brings two insufficiently pleaded claims against ASIC arising out of a lender-placed homeowner's insurance policy (the "ASIC Policy") issued to Pantoja in August 2008.  In count two, Pantoja asks the Court to declare that ASIC must cover an alleged loss that he admits occurred more than a year before the stated coverage period commenced.  In count three, Pantoja claims that ASIC violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, by conspiring with Defendant Banco Popular ("Banco") to deny coverage for the alleged pre-policy loss.  Yet the factual allegations in the Amended Complaint concerning ASIC describe nothing more sinister than the issuance of an insurance policy and the denial of a spurious claim.

Under these circumstances, Pantoja can prove no set of facts that would entitle him to relief for his claims against ASIC.

## STATEMENT OF FACTS[1]

In or about August 2004, Pantoja obtained a loan from Banco in the amount of $1,186,250, secured by a mortgage (the "Mortgage") on property located at 764 Lake Street, Harrison, New York 10604 (the "Property").  *See* Declaration of Michael P. De Simone, dated

---

[1] The statement of facts is based on the well pleaded factual allegations in the Amended Complaint, which for this motion are assumed to be true.  The Court may also consider as part of the Amended Complaint all documents that are attached as exhibits, incorporated by reference, or otherwise "integral" to the Amended Complaint.  *See Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

Oct. 11, 2011 ("De Simone Decl.") ¶ 3 and Exs. A-B (dkt. no. 27); Am. Compl. ¶¶ 3-4.  Pantoja

agreed in the Mortgage that he was obligated to procure hazard or property insurance with

respect to the Property, and that if he failed to provide such insurance, Banco could obtain such

insurance at Banco's option and Pantoja's expense.  *See* De Simone Decl. ¶ 4 and Ex. B at 7,

§ 15; *see also* Am. Compl. ¶ 6.  Pantoja also agreed that any such insurance coverage "might or

might not protect [Pantoja], [Pantoja's] equity in the [Property], or the contents of the [Property]

against any risk, hazard or liability."  De Simone Decl. ¶ 4 and Ex. B at 7, § 15.  In compliance

with the terms of the Mortgage, Pantoja obtained a "hazard insurance policy" from Chubb Group

of Insurance Companies (the "Chubb Policy") in August 2004.  Am. Compl. ¶¶ 7-9.  Pantoja

maintained the Chubb Policy through and until August 24, 2006, but then failed to renew that

Policy.  *Id.* ¶¶ 9-10.

        As a result of this failure to renew the Chubb Policy, the Property was left uninsured for

two years.  *See, e.g. id.* ¶ 11.[2]  Pantoja alleges that in or about April 2007, during the gap in

insurance coverage, Banco entered the Property and intentionally caused "loss and damage" to it

(the "April 2007 Loss").  *See* Am. Compl. ¶¶ 14-15.

        On August 15, 2008, Banco obtained the ASIC Policy for the Property, on Pantoja's

behalf.  *Id.* ¶ 17.  As set forth in the "Declarations" page of the ASIC Policy, ASIC agreed to

insure the Property "against risk of direct physical loss in accordance with the provisions of the

attached Residential Property Coverage form, and which is not excluded."  *Id.* Ex. B at

"Declarations".  One of the provisions in the Residential Property Coverage form, set forth under

the heading "Conditions," states: "Policy Period.  This Policy applies only to loss which occurs

---

[2] Pantoja expressly admits that there was a "gap in insurance coverage" for the Property for one year, from
August 24, 2006 through and including August 24, 2007.  *See* Am. Compl. ¶¶ 11-18, 20.  Curiously, however, the
Amended Complaint says nothing about the additional gap in insurance coverage between August 24, 2007 and the
date the ASIC Policy was issued.

during the policy period." *Id.* ¶ 30 and Ex. B at 4.  The initial policy period of the ASIC Policy

commenced on August 15, 2008 and expired on August 15, 2009, but Banco renewed the ASIC

Policy for an additional year, through August 15, 2010.  *Id.* ¶ 28; and Ex. B at "Declarations".

      In March 2011, Pantoja submitted a Notice of Claim to Banco and ASIC, seeking

coverage under the ASIC Policy for the April 2007 Loss.  *Id.* ¶ 32-33 and Ex. A.  ASIC denied

coverage "because the policy period for the [ASIC] Policy was not in effect at the time of loss."

Am. Compl. ¶ 32.

      Pantoja then commenced this action on May 13, 2011 by filing a complaint in this Court

against ASIC and Banco.  *See* Compl. (dkt. no. 1).  The original complaint was never served on

ASIC.  On September 23, 2011, Pantoja filed the Amended Complaint, asserting a claim against

Banco for money damages, a claim against ASIC for declaratory judgment, and a claim against

both defendants for violation of RICO.  *See* Am. Compl. (dkt. no. 30).  On October 11, 2011,

Banco moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure; that motion is now fully briefed and pending before this Court.  *See* Mot. to

Dismiss (dkt. no. 26).

<u>**ARGUMENT**</u>

**I.**    **THE STANDARD OF REVIEW**

      Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to provide "a

short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1949 (2009).  While "detailed factual allegations" are not required,

"labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not

do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In short, "[t]o survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at

570).  The pleading bar is raised when a party alleges fraud, as Pantoja attempts here: Rule 9(b)

of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud . . . be

stated with particularity."

## II.     PANTOJA CANNOT PROVE THAT THE ASIC POLICY COVERS HIS ALLEGED LOSS

Pantoja's cause of action for declaratory judgment fails as a matter of law because

Pantoja has not made—and cannot make—a prima facie showing that the ASIC Policy provides

insurance coverage for the April 2007 Loss.  It is well-established under New York law that the

policyholder bears the burden of proving that the insurance contract covers the alleged loss.  *See*

*Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000).   When

interpreting the provisions of an insurance contract, a court must "give effect to the intent of the

parties as expressed in the clear language of the contract."  *Village of Sylvan Beach v. Travelers*

*Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995).  "Where the provisions of an insurance contract are

clear and unambiguous, the court[] should not strain to superimpose an unnatural or

unreasonable construction."  *Maurice Goldman & Sons, Inc. v. Hanover Insurance Co.*, 80

N.Y.2d 986, 987, 592 N.Y.S.2d 645, 646 (1992).

Here, the provisions of the ASIC Policy are clear and unambiguous, and Pantoja does not

claim otherwise.  By its express terms, the ASIC Policy "applies only to loss which occurs

during the policy period."  Am. Compl. ¶ 30 and Ex. B at 4.  The two policy periods are

expressly defined as extending from August 15, 2008 until August 15, 2009, and from August

15, 2009 until August 15, 2010.  *Id.* ¶ 28 and Ex. B ("Declarations").

Accordingly, to make a prima facie showing of coverage under the ASIC Policy, Pantoja

must prove that the April 2007 Loss occurred during one of the two policy periods.  See *id.*

¶¶ 28, 30; s*ee also* 7 *Couch on Ins.* § 102:2 (3d ed. Rev. 2011) ("It is a time-honored principle

that the insurer's obligation to pay is contingent on a covered loss occurring during the policy period."). Clearly, however, such a showing is impossible: Pantoja admits that the April 2007 Loss occurred more than a year *before* the commencement of the ASIC Policy. Under these circumstances, Pantoja cannot satisfy his burden of proof, and his claim for coverage necessarily fails. *See* 7 *Couch on Ins.* § 102:7 ("the rule that loss must occur during the policy period for the insured to recover obviously excludes losses that occur before the policy is issued").

Forced to admit that the alleged loss occurred prior to the ASIC's coverage period (Am. Compl. ¶¶ 28–32), Pantoja desperately tries to resuscitate his claim. He alleges that ASIC improperly issued a policy that it "knew or should have known excluded coverage and compensation" for the April 2007 Loss, and intentionally engaged in "time manipulation" and tortious acts" to "deprive[] the plaintiff [of] insurance protection" against the April 2007 Loss. Am. Compl. ¶¶ 34-35. These allegations are a mix of incoherence and conclusory statements that cannot be considered for purposes of this motion. *See, e.g., Twombly*, 550 U.S. at 555. Further, to the extent these allegations contradict the clear and unambiguous provisions of the ASIC Policy, such allegations should be disregarded. *See Hoosier Energy Rural Elec. Coop., Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1318 n.4 (7th Cir. 1994) (applying New York law) (on a 12(b)(6) motion to dismiss, "[a] court need not accept as true a plaintiff's allegations concerning the meaning of an unambiguous contract").

Since Pantoja cannot make a prima facie showing of insurance coverage, there is no basis for further consideration of his claim for declaratory judgment. *See* Ostrager and Newman, *Insurance Coverage Disputes* § 1.01, at 5 (15th ed. Rev. 2011) ("If coverage does not exist under the insuring agreement, the inquiry is at an end.") (citation omitted). Accordingly, the Court should dismiss Pantoja's second cause of action in its entirety.

### III.    PANTOJA'S RICO CLAIMS AGAINST ASIC SHOULD BE DISMISSED

ASIC's only alleged involvement with Pantoja was the issuance of the ASIC Policy, a lender-placed homeowner's insurance policy at the request of Pantoja's mortgage lender, and the subsequent denial of coverage for an alleged loss that indisputably occurred prior to the policy coverage period.  Nonetheless, Pantoja claims that ASIC engaged in essentially criminal conduct and sues for an alleged violation of RICO.  Given the incoherence of the Amended Complaint, it is a challenge to discern Pantoja's allegations of misconduct by ASIC.  Quite plainly, however, the Amended Complaint fails to satisfy the heavy pleading burden to sustain a civil RICO claim.

Courts strictly scrutinize civil RICO complaints because "the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants."  *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).  Where a RICO claim is based in fraud, as is the case here, all allegations of fraudulent predicate acts are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rule of Civil Procedure.  *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 273 (2d Cir. 2011).[3]

To establish a civil RICO claim, a plaintiff must make a three part showing:

> (1) a violation of the RICO Statute, 18 U.S.C. § 1962;
> (2) an injury to business or property; and
> (3) that the injury was caused by the violation of Section 1962.

*Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 183 (2d Cir. 2008).  It is hardly necessary to catalog all of the deficiencies in Pantoja's attempt to plead a civil RICO claim against ASIC.  For purposes here, the most glaring examples are sufficient to make ASIC's case for dismissal.

---

[3] At a minimum, this heightened standard requires that the complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

As a start, while Pantoja does not identify the basis for his RICO claim among the various subsections of Section 1962, all of these subsections require a plaintiff to establish a "pattern of racketeering activity."  18 U.S.C. § 1962(a)-(c); *Spool*, 520 F.3d at 183 (though not expressly stated in statute, plaintiff must also show "pattern of racketeering activity" to establish RICO conspiracy claim under 18 U.S.C. § 1962(d)).  According to RICO's definitional section, to show this "pattern of racketeering activity," a plaintiff must establish "at least two acts of racketeering activity" (18 U.S.C. § 1961(5)), and these "acts of racketeering activity that constitute the pattern must be among the various criminal offenses listed in § 1961(1), and they must be related, and [either] amount to or pose a threat of continuing activity."  *Spool*, 120 F. 3d at 183 (internal quotation marks omitted).  The "continuity" requirement can be satisfied either by showing a "closed-ended" or an "open-ended" pattern, "referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989).

Here, Pantoja has not sufficiently alleged even one predicate act of racketeering by ASIC, much less two or more.  Pantoja's RICO allegations intersperse the conclusory phrases "fraud," "Truth in Lending Act," "wrongful foreclosure process," "extortion under the Hobbs Act," "insurance fraud," and "deceitful statement or omission" (Am. Compl ¶¶ 40-56), but in no instance does he plead the specific elements of these causes of action.  If Pantoja's intent is to plead mail or wire fraud, his allegations also fall far short of the particularity required under Rule 9(b).  One of the necessary elements of fraud is scienter, meaning that a plaintiff "must allege facts that give rise to a *strong* inference of fraudulent intent."  *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178-79 (2d Cir. 2004) (internal quotation marks omitted;

emphasis in original).  Yet the Amended Complaint contains no facts to show that ASIC acted with the requisite state of mind.

Pantoja also has failed to plead the requisite RICO "enterprise."  Under the statute, an "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  "The enterprise must be separate from the pattern of racketeering activity . . . and distinct from the person conducting the affairs of the enterprise."  *First Capital*, 385 F.3d at 173.  If the "enterprise" is an "association in fact," which is the only theoretical possibility here, the complaint must identify "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  *Boyle v. United States,* 129 S.Ct. 2237, 2244 (2009).  Despite these fundamental requirements, Pantoja does not make any allegation that an enterprise, either formal or informal, exists.  Nor does Pantoja identify the three minimal structural features prescribed by the Supreme Court in *Boyle.*  Moreover, even if some form of enterprise could be divined from Pantoja's sparse pleading, he has failed make the required showing that ASIC had "some part in directing [the enterprise's] affairs."  *First Capital*, 385 F.3d at 176 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)).

Indeed, stripped of conclusory pleading and legal conclusions, Pantoja's RICO allegations against ASIC essentially amount to the following: (1) ASIC issued the ASIC Policy, at Banco's direction; and (2) the ASIC Policy did not cover the April 2007 Loss.  *See* Am. Compl. ¶ 54.  These alleged activities constitute nothing more than the ordinary provision of insurance coverage.  As such, the Amended Complaint lacks any factual support for Pantoja's claim that ASIC committed "fraudulent predicate acts" or engaged in "conspiracy and joint effort

. . . that refrained the Plaintiff to take action in saving and preserving his residence." *See* Am. Compl. ¶ 55.

Finally, Pantoja's RICO allegations fail because they do not establish that ASIC's alleged misconduct proximately caused Pantoja's alleged injury. *See Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268-69 (1992) (RICO plaintiffs must show both "but for" causation and "proximate cause"); *Hemi Group, LLC v. City of New York,* 130 S.Ct. 983, 991 (2010) ("in the RICO context, the focus is on the directness of the relationship between the conduct and the harm"). "A predicate act does not proximately cause an injury if it merely furthers, facilitates, permits or conceals an injury that happened or could have happened independently of the act." *Vicon Fiber Optics Corp. v. Scrivo,* 201 F. Supp. 2d 216, 219 (S.D.N.Y. 2002). Pantoja cannot establish the required causal link between ASIC's alleged predicate act (which is unspecified) and Pantoja's alleged injury. As pled, the earliest possible date of ASIC's predicate act was August 2008 (the date the ASIC policy was issued), which was more than a year after Pantoja's alleged injury occurred. Moreover, according to the facts as pled, the April 2007 Loss happened or could have happened independently of any alleged conduct by ASIC.

 Pantoja's RICO claims against ASIC thus fail as a matter of law. The Court should dismiss the third cause of action against ASIC.

## CONCLUSION

For the foregoing reasons, ASIC respectfully requests that the Court dismiss the second and third causes of action in the Amended Complaint, and grant ASIC such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      January 5, 2012

                                  SULLIVAN & WORCESTER LLP

                                  By: /s/ Andrew T. Solomon
                                  Andrew T. Solomon
                                  Karen E. Abravanel
                                  1290 Avenue of the Americas, 29th Floor
                                  New York, New York 10104
                                  Telephone: (212) 660-3000
                                  Facsimile: (212) 660-3001
                                  asolomon@sandw.com
                                  kabravanel@sandw.com

                                  *Attorneys for Defendant American Security Insurance Company*

10

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 5, 2012, I served a true and correct copy of the Memorandum of

Law of Defendant American Security Insurance Company in Support of Motion to Dismiss:

(1) by the ECF system and U.S. mail upon:

> Rafael M. Pantoja
> Register No. 76012-053
> MDC Brooklyn
> Metropolitan Detention Center
> P.O. Box 329002
> Brooklyn, New York 11232
> *Plaintiff Pro Se*

(2) by the ECF system upon:

> John P. Doherty, Esq.
> Michael P. De Simone, Esq.
> Alston & Bird LLP
> 90 Park Avenue
> New York, New York 10016
> *Attorneys for Defendant Banco Popular*

Dated:  New York, New York
        January 5, 2012

> /s/ Andrew T. Solomon
> Andrew T. Solomon