TRULINCS 76012053 - PANTOJA, RAFAEL - Unit: BRO-C-A

---

FROM: 76012053
TO: Jacobs, Howard
SUBJECT: Reconsideration Reply Memorandum
DATE: 10/07/2012 01:44:49 PM

Government Mortgage Action

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
RAFAEL MANUEL PANTOJA,

        Plaintiff,

        REPLY MEMORANDUM

-against-

        11 Civl 3636(VLB)

BANCO POPULAR AND AMERICAN SECURITY
INSURANCE COMPANY,

        Respondent.
-------------------------------------------------------X

Plaintiff Rafael Manuel Pantoja respectfully submits this reply memorandum of law in support of his reconsideration motion, pursuant to Local Rule 6.3 ( the " Motion " ), and in response to the defendants Banco Popular's and ASIC's opposition papers respectively filed on September 27, 2012 ( the " Opposition " ), which both completely avoid addressing the plaintiff's Record Easement relevant to the Realty in this case.

## PRELIMINARY STATEMENT

Plaintiff has moved the Court for judicial consideration of its decision slightly late because the Facility failed to provide paper for the unit printer that remained depleted since August 18, 2012. United States v. Yannotti, 457 F. Supp. 2d 385 ( SDNY 2006 )( The Court ruled on reconsideration motion three months late without credible reason for late filing ). The Motion was presented because the plaintiff's proposed Second Amended Complaint ( " SAC " ) is based upon new claims reserved under the federal Government Mortgage Action and the binding Consent Judgment never fully raised and litigated in either of the Foreclosure and State Court Actions: the foreclosure judgment does not defeat the plaintiff's civil fraud and property damage claims against the Bank in this action, and the rule that a state judgment is conclusive as to every matter that might have been litigated does not apply to new rights and claims acquired in a subsequent ( global ) action which could not have been raised or litigated in the two prior state actions.

Specifically, the Court did not note in its initial decision that the exception to res judicata does not depend on whether the plaintiff could have requested civil fraud damages against the Bank in the Foreclosure Action, because the correct inquiry centers not on or what the plaintiff did or did not do, but whether the

foreclosure court had the power to grant him the relief sought in the proposed SAC ( False Claims Act Relief in accordance with the Government Mortgage Action )( The foreclosure court states that plaintiff's civil fraud claims against the Bank during the foreclosure process "...if newly asserted...do not prevent foreclosure even if proven. " ) EXHIBIT A. Suffice to state, evidence of this post-foreclosure Order rings loudly against this Court's initial supposition that "...the plaintiff here could have and failed to allege tortious conduct and other fraudulent acts committed by defendants during the foreclosure action. " ( p. 7 ).

## ARGUMENT

I. RES JUDICATA

The plaintiff respectfully submits that the Court overlooked the fact that his proposed SAC claims under the False Claims Act could not have been previously raised and litigated since they were based on issues that did not ripen until March 12, 2012, when the United States Government filed its complaint against these same defendants in their positions relative to the Mortgage as defined in that federal action ( i.e. " the Bank " ). Evidence of and discovered in the federal Government Mortgage Action discussed at length in the Motion was needed to expose the defendant's wrongful mortgage acts, which contrary to the Opposition, do invalidate foreclosure judgments under the Consent Judgment ( " Claims seeking injunctive or declaratory relief to clear a cloud on title to real property under state law...shall otherwise take actions seeking to invalidate past mortgage assignments or foreclosures in connection with loans serviced and/or owned by the Bank " ).

The Foreclosure Action and judgment have absolutely no preclusive effect in any state court after the Government Mortgage Action resulted in a binding and preemptive Consent Judgment enforceable and registered in this Court. Because the prior State Court Actions here are preemptively re-defined by the subsequent evidence disclosed in the federal action, the Court was haste in relying "...on New York preclusion principles to determine the extent to which the earlier state court judgments bar this subsequent [federal] litigation. " ( p. 6 ). For purposes of its ruling, it was absolutely necessary for the Court to have seriously examined the plaintiff's pending Writ of Habeas Corpus challenging the voluntariness of the guilty plea in the Criminal Case. Its inability to initially acknowledge such proceeding through judicial notice caused a broad perspective that the challenged Criminal Case "...has a collateral effect in subsequent civil actions barring a criminal defendant from litigating issues which have already been resolved adversely to him in the criminal proceeding " ( p. 6 ). ( Provision 16 of the Mortgage states " The Security Instrument is governed by federal law and the law of New York State...as well as all applicable final, non-appealable, judicial opinions. " ).

II.  APPLICATION TO PLAINTIFF'S CLAIMS

The Court was haste in its application of the New York transactional approach to justify barring the plaintiff's proposed SAC claims in this federal action ( which contains allegations under the False Claims Act for the first time ) because he " could have and failed to allege tortious conduct and other fraudulent acts committed by the defendants during the Foreclosure Action. " ( p. 7 ).

The Court's conclusion here is unreasonable in two respects:

1. The state foreclosure judgment itself ( which the Court did not examine ) provides evidence that the plaintiff did in fact try to raise and allege some of the discovered fraudulent acts committed by the defendants in a motion to vacate the default judgment in the Foreclosure Action ( " Upon the...unsworn affidavit in opposition of Rafael M. Pantoja dated November 21, 2008...the affidavit of Rafael Pantoja, sworn to on February 19, 2009, and the affidavit of Jose Pena, sworn to on February 19, 2009, in support thereof and the exhibits annexed thereto, and the Defendant's Memorandum of Law dated February 25, 2009 in support thereof and in opposition to plaintiff's motion...and the Reply Affirmation of Noah Pusey dated April 16, 2009 in further support thereof..." );

2. The transactional approach does not bar claims raised and alleged in the prior action but precludes only " earlier litigated claims ", and the Court would have known, upon examining the foreclosure judgment, that plaintiff's claims of civil fraud against the defendants in a motion to vacate could never have been in fact litigated and therefore not barred for that reason in this federal action. Burgos v. Hopkins, 14 F3d 787, 789 ( 2d Cir 1994 ) ( " Under res judicata, ' a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. '" ). Moreover, this bar does not apply in this case where " the initial forum did not have the power to award the full measure of relief sought in this later federal action. " Davison v. Capuano, 792 F2d 275, 278 ( 2d Cir 1986 ); McLearn v. Cowen & Co., 48 N.Y. 696, 422 N.Y.S. 60, 61, 397 NE 2d 750 ( NY 1979 ).

III PLAINTIFF'S RECORD EASEMENT

Contrary to conclusions, the plaintiff's first and second causes of action, which necessarily include damages to his Easement of Record do not " arise squarely out of the terms of the Mortgage and the Realty ", nor does it " clearly fit within the same factual grouping surrounding the Foreclosure Action. " ( p. 7 ). The terms of the Mortgage do not cover, at all, the plaintiff's Easement of Record conveyed to him together

with his Realty deeds of 2004 and 2005 ( chain of title ). The Plaintiff's Record Easement involves a completely different property fee interest with a completely different metes and bounds description than the Realty, and is absolutely unrelated to the factual grouping surrounding the Realty in the Foreclosure Action.

This being the case, the Court misapprehended that the plaintiff's claims of fraud and property damages relating to his Record Easement were precluded because " the Foreclosure Action is a final judgment that forever barred and foreclosed [plaintiff] of all rights, claims, liens, title, interest and equity of redemption in the said mortgaged premises and each and every part [thereof]. " ( p. 8 ).

The " forever barred and foreclosed " wording referred to repeatedly in the decision constitutes standard language in all foreclosure judgments that has absolutely no effect on Record Easements that run with the land, like the plaintiff's. Clearly, the foreclosure sale of the Realty which customarily refers to " forever barred and foreclosed " is not intended to sever Record Easements and other non-monetary property interests that are created by substantive law.

Indeed, absent the consent of the owner of the easement or the easement being in bona fide dispute, Article 13 of the New York State Real Property Actions and Proceedings Law ( " RPAPL " ) does not even allow the foreclosure court to authorize a foreclosure sale of the Realty " free and clear " of an Easement. City of New York v. Nat'l R.R. Passenger Corp., 2008 U.S. Dist. LEXIS 99247, 2008 WL 5169636 at 8 ( EDNY 2008 ).

Had the Court examined the foreclosure judgment, it would have discovered that the Realty was foreclosed " subject to [plaintiff's] easements of record " (see, Foreclosure Judgment p. 11 ). Accordingly, the Court's position that the foreclosure judgment, by virtue of the " forever barred and foreclosed " language, precludes the plaintiff's claims of fraud and damages to his Record Easement stands in plain error. ( " At all relevant times, the plaintiff is ' owner of real property ' as stated in the Amended Complaint, by definition, includes the plaintiff's Record Easement situated at the Realty " ).

Additionally, in the federal Government Mortgage Action, the Government disclosed the standard practice of the Bank in establishing a platform of mortgage origination fraud that served to solicit, incorporate, and subsume " lying about his professional status as a lawyer and providing a phony social security number... " and other false statements in order to submit false claims to the Government. Therefore, the plaintiff is not precluded on this alone from challenging the defendants similar origination fraud relating to the Mortgage under

FROM: 76012053
TO: Jacobs, Howard
SUBJECT: Cont. Reconsideration Memo Reply
DATE: 10/07/2012 03:12:06 PM

Reply Memorandum

the terms of the Consent Judgment enforceable in this Court.

### III. PLAINTIFF'S RICO CLAIMS

The Court's finding that " plaintiff's RICO claim is another legal theory arising out of the claims related to the Realty that could have been, but were not, raised in the Foreclosure Action ", predates the Court's knowledge of the contrary findings described and stipulated in the Exhibits to the Consent Judgment filed in the federal Government Mortgage Action and registered in this Court.

Specifically, Exhibit A of the Consent Judgment ( " Settlement Terms " ), discloses the factual elements comprising the fraudulent issuances of force-placed insurance policies arising from defaulted mortgages, and evident in the complicit conduct of the defendants described in the proposed SAC.

Further, the discovery of the ASIC force-placed policy scheme occurred in 2009, almost 6 months after the foreclosure judgment ended the Foreclosure Action. Thus, the RICO claim surrounding the ASIC policy would have been impossible for the plaintiff to raise, less litigate, in the Foreclosure Action. Therefore, the plaintiff cannot be barred from raising a RICO claim in this Court for the first time, and while the State Court Action was pending.

Again, the remedial provisions expressed in the federal Government Mortgage Action clearly spell out the RICO violation at issue as the direct and primary cause of injury to the plaintiff's Easement of Record for which redress is sought by the plaintiff in this case, and specifically reserved in that case. The defendants' RICO liability for its conduct surrounding the ASIC policy has been established in the federal Government Mortgage Action, and not contingent upon the intervening acts of the homeowner, like the plaintiff. Accordingly, the defendants' fraudulent practice that led to the issuance of the force-placed policy in question here is sufficient to form a prima facie basis of the plaintiff's injuries.

Furthermore, a Senate Committee has recently disclosed the " intricate web of relationship " between defendant ASIC ( i.e. " Assurant " ) and the defendant Bank in the entrepreneurial issuance of the fraudulent force-placed insurance policies, and such fact is an important step for the Court to take legislative notice of the Bill enacted to correct the abuses claimed by the plaintiff in the proposed SAC.

IV. THE PROPOSED SAC ON NEW EVIDENCE

Since the Court initially overlooked the precedential effect of the Consent Judgment on the preclusion waived by the defendant Bank therein, the Court has the legal basis to reconsider and hold that the plaintiff's SAC comprised of claims specifically reserved for individuals ( such as the plaintiff ), are entitled to redress in a separate civil claim ( notwithstanding foreclosures ) under the terms of the Consent Judgment which this Court is required to enforce under Law.

The Court's view that "...even if the Court were to accept the Consent Judgment as presenting new and significant facts, the proposed [SAC] fails to assert additional claims that are not barred by the Foreclosure Action and plaintiff's plea in the Criminal Case " ( p. 11 ), is not completely calibrated. The Court's correct inclination to accept the Consent Judgment as new evidence supporting leave for the plaintiff to file the SAC claims on that basis should have logically led to one of the factors that New York Courts look to determine whether to apply the doctrine of collateral estoppel-the presence of new evidence. Here, since significant new evidence of fraud against the Bank was uncovered in the federal action but subsequent to the Foreclosure Action ( and the State Court Action ) said to result in an estoppel of this federal action, it cannot be found that the plaintiff was afforded a full and fair opportunity to present his case in the absence of that evidence. Schwartz v. Public Adm. of the County of Bronx, 24 NY 2d 65, 246 NE 2d 725, 298 NYS 2d 955, 961 ( 1969 ); 73 NY Jur. 2d Judgments, Section 323, at 386.

The plaintiff's claims in the proposed SAC are derived from evidence gathered against the defendant Bank in the Government Mortgage Action. Moreover, Exhibits F and G of the Consent Judgment provide multiple instances of fraud practiced by the Bank in its origination of mortgages, like the instant one. To dismiss this federal action ( and the State Court Action as well ), on the basis of issue preclusion, the Court was required to find that the [plaintiff's] damages raised in this case was " squarely addressed and specifically decided " at the Foreclosure Action. Of course, no such finding could exist in this case. O'Conner v. State of New York, 126 AD 120, 124, 512 NYS 2d 536, 540 ( 3rd Dep't ), affd., 70 NY 2d 914, 519 NE 302, 524 NYS 391 ( 1987 ).

Contrary to the findings in the decision, collateral estoppel cannot be invoked to bar a party from litigating an issue that has never been determined. In re Kellogg, 138 AD 2d 799, 802 ( 3d Dep't. 1988 ); Chemical Bank v. We're Assoc. Co., 155 AD 260, 261 ( 1st Dep't. 19889 ). Therefore, the State Court erred in finding that the plaintiff was afforded a full and fair opportunity to litigate his subsequently reserved claims proposed in the SAC. It is also significant to point out that the plaintiff was deprived of any kind of

pre-trial discovery in the Foreclosure Action, and it was not until long after the foreclosure judgment was entered that the new evidence of the defendant Bank's pervasive misconduct surrounding mortgage practices came to the light, and now fully asserted in the proposed SAC (see, CPLR 3214(b))( " Service of notice of motion made under...Rule 3212...stays disclosure until determination of the motion unless the Court orders otherwise " ).

The record is now properly and sufficiently developed on these points of law for the Court to make a new determination whether the plaintiff's proposed SAC claims reserved under the new evidence disclosed in the Government Mortgage Action were brought in the Foreclosure Action, and whether these differences in the nature of the suit mandate that he be given a chance to prove his case. See, Gutierrez v. Coughlin, 841 F2d 484, 486 ( 2d Cir. 1988 )( per curium ) ( Under New York law, holding that prior adjudication of Article 78 proceeding in federal 1983 in plaintiff's favor did not preclude relitigation of issue of due process violation where nature of defenses and liability would be different in 1983 proceeding ).

The facts necessary to each action can be characterized as stemming from the same factual predicate of the Mortgage and Realty, but the essential facts giving rise to the claims in the proposed SAC under the authority of the registered Consent Judgment had not transpired nor discovered at the time the plaintiff interposed his answer in the Foreclosure Action. The common nucleus analysis entails in part the Court's consideration as to whether the new facts as disclosed in the Government Mortgage Action necessary to the proposed claims were available to the plaintiff at the time the Foreclosure Action was filed. Walderman v. Village of Kiryas Joel, 207 F3d 105, 112 ( 2d Cir. 2000 ).

Res judicata will not bar a suit based upon legally significant acts occurring after the filing of a prior suit that was itself based upon earlier acts. SEC v. First Jersey Sec., 101 F3d 1450, 1464 ( 2d Cir 1996 ) ( finding no res judicata bar to suit based on fraudulent acts that occurred after filing of prior suit, even though acts were part of same pattern that formed basis of first suit ); See also, Computer Assoc. Int'l Inc. v. Altai Inc., 126 F3d 365, 369 ( 2d Cir 1997 )( " Without a demonstration that the conduct complained of in the second action occurred prior to the initiation of the first action, res judicata is simply inapplicable " ). Plainly, the Court was haste to decide that the plaintiff somehow balked at a procedural obligation to expand the Foreclosure Action to assert his proposed SAC claims ( in accordance with court-ordered Consent Judgment ) relating to the Bank's fraudulent conduct before, during and after the commencement of that action or be forever barred from challenging that subsequent conduct in this federal action. SEC; 101 F3d at 1465.

Lastly, it is the defendant Bank in this case that misinterprets the Consent Judgment. Indeed, " Banco Popular " is named in the Consent Judgment because it is defendant " Chase Bank's predecessor " in the Mortgage. Moreover, a cursory reading of the Consent Judgment and the Exhibits thereto establish more than just "...a fund to compensate for certain [fraudulent] mortgage practices ". The Bank's Opposition is puerile in this regard.

Rafael Manuel Pantoja, J.D.
by
_____
Rafael M. Pantoja

SUPREME COURT - STATE OF NEW YORK
IAS PART WESTCHESTER COUNTY

To commence the statutory time period of appeals as of right (CPLR 5513[a]), you are advised to serve a copy of this order, with notice of entry, upon all parties.

FILED AND ENTERED
ON 12-15- 2009
WESTCHESTER COUNTY CLERK

PRESENT: HON. JOAN B. LEFKOWITZ
                                              Justice

-----------------------------------------------------------X
JPMORGAN CHASE BANK, NA f/k/a JPMorgan Chase Bank as Trustee for BS ALT A 2004-12,

                                  Plaintiff,

         - against -

RALPH PANTOJA a/k/a RAFAEL M. PANTOJA, et al.,

                                  Defendants.
-----------------------------------------------------------X

Index No.:      6467/06
Motion Date:   12/11/09

The following papers numbered 1 to 14 read on this motion to vacate judgment.

|                                                          | Papers Numbered |
|---|---|
| Notice of Motion/Order to Show Cause-Affidavits Cross-Motion | 1-2 |
| Answering Affidavits | |
| Replying Affidavits | 3 |
| Affidavits | |
| Filed Papers | |
| Pleadings-Exhibits-Stipulations-Minutes | |
| Briefs: Plaintiffs/Petitioner's___ Def. Resp. | 4-14 |

Upon the foregoing papers it is ORDERED that the motion is denied for the fourth time as the arguments advanced were previously considered and rejected or, if newly asserted, are conclusory and not substantiated or do not prevent foreclosure even if proven.

DATED:   December 14, 2009
         White Plains, NY

ENTERED: *[signature]*
JOAN B. LEFKOWITZ, J.S.C.

Stein Wiener & Roth, LLP
Attorneys for Plaintiff
One Old Country Road, Ste. 113
Carle Place, NY 11514

Rafael Pantoja
Defendant Pro Se
764 Lake Street
West Harrison, NY 10604